UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MIA SAGOTE,<br><br>    Petitioner,<br><br>    v.<br><br>JANEL ESPINOZA, Warden,<br><br>    Respondent. | Case No. 17-cv-06400-YGR (PR)<br><br>**ORDER GRANTING RESPONDENT'S MOTION TO DISMISS PETITION AS UNTIMELY; AND DENYING CERTIFICATE OF APPEALABILITY** |

    Petitioner Mia Sagote, a state prisoner currently incarcerated at the Central California Women's Facility, filed the instant *pro se* action for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.

    Before the Court is Respondent's motion to dismiss the claims in the petition as untimely under the one-year statute of limitations established by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2244(d). Dkt. 14.

    Having read and considered the papers submitted and being fully informed, the Court GRANTS Respondent's motion to dismiss.

**I.    BACKGROUND**

    On October 29, 2013, Petitioner was convicted by a San Francisco County jury of robbery, kidnapping, and first degree murder with the special circumstances of prevention of witness testimony, commission while engaged in a kidnapping, and infliction of torture. Resp't Ex. 1 at 2; Dkt. 14-1 at 4. On December 20, 2013, the trial court sentenced Petitioner to a term of life in prison without the possibility of parole plus a determinate term of three years. *Id.*

    On November 13, 2015, the California Court of Appeal affirmed the judgment on direct appeal. Resp't Ex. 1 at 45; Dkt. 14-1 at 47. On February 17, 2016, the California Supreme Court denied review of Petitioner's direct appeal. Resp't Ex. 3

    On April 4, 2017,[1] Petitioner filed a state habeas petition in the San Francisco County

---

[1] According to the mailbox rule, a *pro se* federal or state habeas petition is deemed filed on the date it is delivered to prison authorities for mailing. *See Saffold v. Newland*, 250 F.3d 1262,

Superior Court, and the petition was denied on the merits on June 6, 2017. Resp't Exs. 4, 5.

On June 19, 2017, Petitioner filed a state habeas petition in the California Court of Appeal. Resp't Ex. 6. On July 12, 2017, the state appellate court denied the petition on procedural grounds, stating as follows:

> The petition is procedurally barred because it is untimely (*In re Sanders* (1999) 21 Cal. 4th 697, 703-704) and raises claims petitioner raised or could have raised on direct appeal (*In re Brown* (1973) 9 Cal. 3d 679, 682). For these reasons, the petition for writ of habeas corpus is denied . . . .

Resp't Ex. 7 at 1; Dkt. 14-2 at 140.

On July 26, 2017, Petitioner filed a state habeas petition in the California Supreme Court. Resp't Ex. 8. On October 18, 2017, the petition was summarily denied. Resp't Ex. 9.

On October 26, 2017,[2] Petitioner filed the original petition for writ of habeas corpus in this Court, but she did not sign it. Dkt. 1. On December 1, 2018, Petitioner submitted a signed copy of the petition. Dkt. 9.

On January 23, 2018, the Court issued an order directing Respondent to show cause why the petition should not be granted. Dkt. 10.

On May 11, 2018, after being granted an extension of time to do so, Respondent filed the instant motion to dismiss. Dkts. 13, 14. On June 1, 2018, Petitioner filed an opposition to the motion. Dkt. 15. On June 16, 2018, Respondent filed a reply. Dkt. 16. On July 2, 2018, Petitioner filed an unsolicited sur-reply. Dkt. 17.

---

1268 (9th Cir. 2001), *vacated and remanded on other grounds*, *Carey v. Saffold*, 536 U.S. 214 (2002) (holding that a federal or state habeas petition is deemed filed on the date the prisoner submits it to prison authorities for filing, rather than on the date it is received by the court). A proof of service is sufficient to show "delivery" to prison officials. The Court assumes that Petitioner delivered her state and federal petitions to prison officials on the same dates the proofs of service were signed or the same dates the petitions were signed (if no proofs of service included). *See Koch v. Ricketts*, 68 F.3d 1191, 1193 (9th Cir. 1995) (petitioner assumes risk of proving date of mailing).

[2] As mentioned above, according to the mailbox rule, a *pro se* federal habeas petition is deemed filed on the date it is delivered to prison authorities for mailing. *See Saffold v. Newland*, 250 F.3d at 1268. In the proof of service attached to her petition, Petitioner indicates that she deposited the motion in the "United State[s] mail in Chowchilla, California" on October 26, 2017, and addressed it to the Court on that date. Dkt. 1 at 23. Therefore, the Court deems the petition filed as of October 26, 2017.

2

## II. DISCUSSION

### A. Overview

AEDPA, effective April 24, 1996, imposes a limitations period on petitions for a writ of habeas corpus filed by state prisoners. In prisoner actions challenging non-capital state convictions or sentences, a habeas petition must be filed within one year of, inter alia, the date the judgment became final after the conclusion of direct review or the time passed for seeking direct review. 28 U.S.C. § 2244(d)(1).

A state prisoner with a conviction finalized after April 24, 1996, such as Petitioner, ordinarily must file a federal habeas petition within one year of the date his or her process of direct review came to an end. *See Calderon v. United States District Court (Beeler)*, 128 F.3d 1283, 1286 (9th Cir. 1997), *overruled in part on other grounds by Calderon v. United States District Court (Kelly)*, 163 F.3d 530 (9th Cir. 1998) (en banc). The one-year period is calculated according to the general rule for counting time in federal courts, Rule 6(a) of the Federal Rules of Civil Procedure. *Patterson v. Stewart*, 251 F.3d 1243, 1246 (9th Cir. 2001). That is, "the day of the act, event, or default from which the designated period of time begins to run shall not be included" in the one-year limitations period. Fed. R. Civ. P. 6(a). This is referred to as the "anniversary method" because, absent any tolling, the expiration date of the limitations period will be the same date as the triggering event in the following year. *Patterson*, 251 F.3d at 1246.

"[D]irect review" includes the ninety-day period during which a criminal appellant can file a petition for a writ of certiorari from the United States Supreme Court, whether he or she actually files such a petition or not. *Bowen v. Roe*, 188 F.3d 1157, 1159 (9th Cir. 1999).

In the present case, the California Supreme Court denied review on February 17, 2016. The judgment became final for purposes of the AEDPA statute of limitations ninety days later, on May 17, 2016. *See id.* The one-year limitations period began to run on that date. Accordingly, Petitioner had until May 17, 2017 to file the instant petition. *See* 28 U.S.C. § 2244(d). Therefore, the instant federal habeas petition filed on October 26, 2017, a little over five months after the limitations period had expired, is untimely absent tolling.

### B. Tolling

#### 1. Statutory Tolling

The one-year statute of limitations is tolled under section 2244(d)(2) for the "time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending . . . ." 28 U.S.C. § 2244(d)(2). Tolling applies to one full round of collateral review. *Carey v. Saffold*, 536 U.S. 214, 223 (2002). The limitations period is also tolled during the time between a lower state court's decision and the filing of a notice of appeal to a higher state court. *Id.* In California, where prisoners generally use the State's original writ system, this means that the limitations period remains tolled during the intervals between a state court's disposition of an original state habeas petition and the filing of the next original state habeas petition in a higher court, provided the prisoner did not delay unreasonably in seeking review in the higher court. *Id.* at 220-25.

In the instant case, the limitations period ran from May 17, 2016 to April 4, 2017, for 322 days, before Petitioner filed her state habeas petition in the state superior court. Thus, when Petitioner filed her first state habeas petition on April 4, 2017, she had 43 days (365 days minus 322 days) of the limitations period remaining. Pursuant to *Carey*, statutory tolling of the limitations period should apply to the entire time she was pursuing state collateral relief if she did not delay unreasonably in seeking review in the higher court. *Id.* Thus, arguably the limitations period could be tolled from April 4, 2017 (the date she filed her state habeas petition in the state superior court) to October 18, 2017 (the date the state supreme court denied her state habeas petition). The limitations period would have then resumed running on October 18, 2017 and would have run until October 26, 2017, the date her federal petition was deemed filed, which is 8 additional days. A total of 330 days (322 days plus 8 days) would have elapsed before Petitioner filed her federal petition. Therefore, if statutory tolling applies, Petitioner's federal petition would be timely because it was filed thirty-five days (365 days minus 330 days) before the limitations period expired. However, as discussed below, Respondent's position is that Petitioner is not entitled to statutory tolling for the time period she filed her state habeas petitions in the state appellate and supreme courts. Dkt. 14 at 3-4.

4

The Court now analyzes whether Petitioner is entitled to statutory tolling during the entire time frame she sought collateral review. As mentioned above, the limitations period started to run on May 17, 2016, and Petitioner filed her state habeas petition in the state superior court on April 4, 2017, and the state superior court denied the petition on June 6, 2017. *See* Resp't Exs. 4, 5. There is no dispute that the limitations period was tolled during the entire time period said petition was pending in the state superior court.

As mentioned, when Petitioner filed her first state habeas petition on April 4, 2017, she had 43 days (365 days minus 322 days) of the limitations period remaining. When the clock resumed on June 6, 2017, Petitioner had 43 more days or up to and until July 19, 2017,[3] to file a timely federal habeas petition.

Respondent asserts that although Petitioner filed a state habeas petition in the state appellate court in June 2017, before the limitations period expired, that petition did not toll the AEDPA statute of limitations because it was not "properly filed" for purposes of statutory tolling as the state court found all claims in the petition untimely. Dkt. 14 at 3-4. The Court agrees with Respondent. An application is "properly filed" under section 2244(d)(2), when its delivery and acceptance, by the appropriate court officer for placement into the official record, are in compliance with the applicable laws and rules governing filings. *Artuz v. Bennett*, 531 U.S. 4, 8-9 (2000). These usually prescribe, for example, the form of the document, the time limits upon its delivery, the court and office in which it must be lodged, and the requisite filing fee. *Id.* Here, the state appellate court found Petitioner's entire state habeas petition untimely as indicated by its decision on July 12, 2017 clearly stating that petition was "procedurally barred because it is untimely" and its citation to *In re Sanders*. *See* Resp't Ex. 7 at 1; Dkt. 14-2 at 140. *In re Sanders* discusses the procedural bars against untimely state habeas petitions and "insist[s] [that] a litigant mounting a collateral challenge to a final criminal judgment do so in a timely fashion." 21 Cal. 4th at 703. Thus, the state appellate court's statement and citation of *In re Sanders* is a clear

---

[3] Respondent did not take the mailbox rule into consideration, and thus Respondent incorrectly stated that Petitioner only had until "July 5, 2017" to file a timely federal habeas petition after the limitations period began to run again on June 6, 2017. *See* Dkt. 14 at 3.

ruling that the petition was untimely, and the brevity of the court's opinion does not change this analysis. *See Walker v. Martin*, 562 U.S. 307, 310 (2011) (holding California courts may signal that a habeas petition is denied as untimely by simply citing to the controlling decisions). "When a postconviction petition is untimely under state law, 'that [is] the end of the matter' for purposes of § 2244(d)(2)." *Pace v. DiGuglielmo*, 544 U.S. 408, 414 (2005) (citing *Carey v. Saffold*, 536 U.S. at 226). In *Pace*, the Supreme Court held that "[b]ecause the state court rejected petitioner's [postconviction] petition as untimely, it was not 'properly filed,' and he [or she] is not entitled to statutory tolling under § 2244(d)(2)." *Id.* at 413 (brackets added). Consistent with *Pace*, it cannot be said that Petitioner's state habeas petition filed in the state appellate court on June 19, 2017, was a "properly filed" application which tolled the limitations period under section 2244(d)(2). *Id.*

Meanwhile, in her opposition, Petitioner argues that her state habeas petition was properly filed and timely under AEDPA because she filed it shortly after the denial of a lower court petition for habeas relief. Dkt. 15 at 3. In essence, Petitioner argues that she complied with the applicable laws and rules governing filing in the state appellate court, but that the state court "was clearly erroneous in finding the petition [was] untimely." *Id.* It seems that Petitioner would have this Court revisit the state appellate court's imposition of the procedural bar and find that her state superior court petition was "properly filed" to entitle her to statutory tolling and the corresponding gap tolling for the period of time her subsequent habeas petitions were pending in the higher courts.[4] However, the state appellate court's determination that state habeas petition was untimely is "'the end of the matter' for purposes of § 2244(d)(2)." *Pace*, 544 U.S. at 414; *see, e.g., Allen v. Siebert*, 552 U.S. 3, 6-7 (2007) (per curiam) (whether time limit relied upon by state court is jurisdictional or affirmative defense, it is a condition to filing; therefore, untimely state postconviction petition was improperly filed even though Alabama's time limit operates as

---

[4] Gap tolling refers to the limitations period "remain[ing] tolled during the intervals between the state court's disposition of a state habeas petition and the filing of a petition *at the next state appellate level*." *Nino v. Galaza*, 183 F.3d 1003, 1005 (9th Cir. 1999) (emphasis added). After *Carey*, this means that a state habeas petition is pending "in the absence of undue delay," while a California petitioner "complete[s] a full round of [state] collateral review" all the way to the California Supreme Court. *Biggs v. Duncan*, 339 F.3d 1045, 1048 (9th Cir. 2003) (internal quotation marks omitted).

affirmative defense). Again, the state appellate court, in denying Petitioner's state habeas petition, clearly stated "[t]he petition is procedurally barred because it is untimely . . . ." Resp't Ex. 7 at 1; Dkt. 14-2 at 140. There is no ambiguity with respect to the untimeliness of that state habeas petition under state law. Furthermore, the state supreme court summarily denied the same state habeas petition, which indicates it adopted the same procedural bars. *Ylst v. Nunnemaker*, 501 U.S. 797, 801-06 (1991) (holding that where the last reasoned opinion on claim expressly imposes a procedural bar, it should be presumed that later decision summarily rejecting claim did not silently disregard bar and consider merits). Because that state habeas petitions were not "properly filed" in the state appellate and supreme courts, they did not initiate any period of statutory tolling while these petitions were pending or any corresponding gap tolling between the time she filed her state habeas petitions in the state appellate and supreme courts. Thus, the remaining 43 days in the limitations period continued to run and expired on July 19, 2017. And Petitioner's federal petition, which was deemed filed on October 29, 2017, is still untimely by more than three months. Therefore, statutory tolling is not sufficient to overcome the time bar to Petitioner's federal habeas petition.

### 2. Equitable Tolling and Actual Innocence Exception

Aside from statutory tolling, the AEDPA limitations period may be equitably tolled "if 'extraordinary circumstances' beyond a prisoner's control make it impossible to file a petition on time." *See Calderon v. United States Dist. Court (Beeler)*, 128 F.3d 1283, 1288 (9th Cir. 1997) (citation omitted), *overruled in part on other grounds by Calderon v. United States Dist. Court (Kelly)*, 163 F.3d 530 (9th Cir. 1998) (en banc). The prisoner "must show that the 'extraordinary circumstances' were the cause of his [or her] untimeliness." *Spitsyn v. Moore*, 345 F.3d 796, 799 (9th Cir. 2003) (citations omitted). The petitioner must also show that he or she has been "pursuing his [or her] rights diligently" and that "some extraordinary circumstance stood in his [or her] way." *Pace*, 544 U.S. at 418.

Petitioner first asserts she is "proceeding *in propia persona* and has little education and zero legal training . . . ." Dkt. 17 at 3. However, ignorance of the law and lack of legal sophistication do not alone constitute extraordinary circumstances warranting equitable tolling.

7

*Rasberry v. Garcia*, 448 F.3d 1150, 1154 (9th Cir. 2006) (cataloguing cases from other circuits and holding that "a *pro se* petitioner's lack of legal sophistication is not, by itself, an extraordinary circumstance"); *see also Hughes v. Idaho State Bd. of Corr.*, 800 F.2d 905, 909 (9th Cir. 1986) (illiteracy of *pro se* petitioner insufficient cause to avoid procedural bar); *Cantu-Tzin v. Johnson*, 162 F.3d 295, 299-300 (5th Cir. 1998) (*pro se* status during state habeas proceedings did not justify equitable tolling); *United States v. Flores*, 981 F.2d 231, 236 (5th Cir. 1993) (*pro se* status, illiteracy, deafness and lack of legal training does not justify equitable tolling). Therefore, Petitioner is not entitled to equitable tolling based solely on her ignorance of the law.

Petitioner also argues that the late filing of her claims should be excused under the "actual innocence" exception of *McQuiggin v. Perkins*, 133 S. Ct. 1924 (2013). Dkt. 14 at 5; Dkt. 17 at 4-5. The Supreme Court held in *McQuiggins v. Perkins* that actual innocence, if proved, may serve as an equitable exception to the AEDPA statute of limitations. *Accord Lee v. Lampert*, 653 F.3d 929, 931 (9th Cir. 2011) (en banc) (holding that "a credible showing of 'actual innocence' under *Schlup v. Delo*, 513 U.S. 298 (1995), excuses the statute of limitations period established by [AEDPA]."). Under this "equitable exception," a petitioner "may pass through the *Schlup* gateway and have [the] otherwise time-barred claims heard on the merits." *Id.* at 932.

In order to pass through the *Schlup* gateway, a petitioner must produce sufficient proof of his or her actual innocence to bring him or her within the narrow class of cases "'implicating a fundamental miscarriage of justice.'" *Schlup*, 513 U.S. at 314-15 (quoting *McCleskey v. Zant*, 499 U.S. 467, 494 (1991)). "[The] evidence of innocence [must be] so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error." *Id.* at 316. A "petitioner must show that it is more likely than not that no reasonable juror would have convicted him [or her] in the light of the new evidence." *Id.* at 327. This exacting standard permits review only in the "extraordinary case," but it "does not require absolute certainty about the petitioner's guilt or innocence." *House v. Bell*, 547 U.S. 518, 538 (2006) (quoting *Schlup*, 513 U.S. at 327).

A petitioner must support his or her claims "with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—

8

that was not presented at trial." *Schlup*, 513 U.S. at 324. "By enumerating [these] categories of evidence that could prove innocence, the Supreme Court made clear that less reliable kinds of evidence cannot support an actual innocence claim." *Lee*, 653 F.3d at 945-46 (Kozinski, J. concurring). A reviewing habeas court then "consider[s] all the evidence, old and new, incriminating and exculpatory" admissible at trial or not. *House*, 547 U.S. at 538 (internal quotation marks removed). On this complete record, the court makes a "'probabilistic determination about what reasonable, properly instructed jurors would do." *Id.* (quoting *Schlup*, 513 U.S. at 329). The court is to "assess how reasonable jurors would react to the overall, newly supplemented record." *Id.* In sum, a petitioner must show that it is more likely than not that "no reasonable juror would have convicted him [or her]." *Schlup*, 513 U.S. at 327 (brackets added). Put another way, a petitioner must "persuade [a reviewing court] that every juror would have voted to acquit him [or her]." *Lee*, 653 F.3d at 946 (citing *Schlup*, 513 U.S. at 327) (Kozinski, J. concurring) (brackets added).

In response to her claim of actual innocence, Respondent points out that in the present petition and her previous state petitions, Petitioner presents no evidence of actual innocence. *See* Dkt. 16 at 4. Instead, she claims that "DNA testing will exclude her as the donor of the sample contained on untested evidence." Dkt. 17 at 4. However, the record shows that the state superior court denied her state habeas petition seeking DNA testing noting that she failed to comply with statutory requirements, stating: "Most notably, Petitioner fails to . . . clearly state that she is innocent and not the perpetrator of the crime." Resp't Ex. 5 at 6; Dkt. 14-1 at 208. In addition, the state appellate court on direct appeal noted that "the evidence of [Petitioner]'s guilt was extremely strong" and "multi-layered." Resp't Ex 1 at 44-45; Dkt. 14-1 at 46-47. While the timing of the petition is a factor bearing on the reliability of the evidence purporting to show actual innocence, *Perkins*, 133 S. Ct. at 1928, the Court finds that Petitioner makes no showing of any sort. Based on the foregoing, the Court is not persuaded that had a jury considered Petitioner's version of events along with all the other evidence of guilt, it is more likely than not that "no reasonable juror would have convicted [her]," *Schlup*, 513 U.S. at 327, or that "every juror would have voted to acquit [her]," *Lee*, 653 F.3d at 946. Thus, Petitioner is not entitled to

9

the equitable exception to the AEDPA statute of limitations under *Schlup*, 513 U.S. at 327.

In sum, the Court has determined above that neither statutory nor equitable tolling saves the petition from being untimely. Nor is Petitioner entitled to review of her claims under the actual innocence exception. Therefore, Petitioner's federal habeas petition is untimely. Accordingly, the Court GRANTS Respondent's motion to dismiss the petition as untimely.

**III.    CERTIFICATE OF APPEALABILITY**

The federal rules governing habeas cases brought by state prisoners have been amended to require a district court that dismisses or denies a habeas petition to grant or deny a certificate of appealability ("COA") in its ruling. *See* Rule 11(a), Rules Governing § 2254 Cases, 28 U.S.C. foll. § 2254 (effective December 1, 2009).

For the reasons stated above, Petitioner has not shown "that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Accordingly, a COA is DENIED.

**IV.    CONCLUSION**

For the reasons outlined above, the Court orders as follows:

1.    Respondent's motion to dismiss the petition for a writ of habeas corpus as untimely is GRANTED, and this action is DISMISSED with prejudice. Dkt. 14.

2.    A COA is DENIED. Petitioner may seek a COA from the Ninth Circuit Court of Appeals.

3.    The Clerk of the Court shall terminate all pending motions and close the file.

4.    This Order terminates Docket No. 14.

IT IS SO ORDERED.

Dated: 12/19/2018

_____
YVONNE GONZALEZ ROGERS
United States District Judge